## Harris, Appellant, v. Keystone Coal and Coke Company.

*Landlord and tenant—Leases—Mines and mining—Mining village—Highways—Ownership by mining company—Control.*

1. Where a mining company owns all the land upon which a mining village has been erected, as well as the land used for highways, and leases the houses in the village to tenants upon terms providing in effect that all streets, lanes or alleys or other highways are private roads and are the property of the party of the first part, subject at all times to its police rules and regulations, and that the lessor may keep out and away from said premises any person or persons whom it may deem necessary and expedient in the exercise of its police rights the lease is not open to the objection that it offends against public policy, and is valid.

2. Where these restrictions are clearly imposed there is no occasion for the application of the rule that a covenant relating to highways shall be construed most strongly against the owner of the premises; nor can the company be deprived of control of the highways on the ground that the right of way is appurtenant to the leased premises.

3. In an action against such mining company and its officials for wilfully conspiring to injure plaintiff's business it appeared that plaintiff had engaged in the business of selling a high explosive to defendant's employees and that defendants had excluded plaintiff from the village. The trial judge directed a verdict for defendants upon which judgment was entered. *Held,* no error.

Argued Sept. 28, 1916. Appeal, No. 81, Oct. T., 1916, by plaintiff, from judgment of C. P. Westmoreland Co., Feb. T., 1915, No. 676, on verdict for defendants, in case of Louis Harris, Trading as Victor Supply Company v. Keystone Coal and Coke Company, a Corporation, and H. F. Bovard, W. E. Henderson, J. A. Willis and R. W. Sterrett. Before BROWN, C. J., MESTREZAT, POTTER, STEWART, MOSCHZISKER, FRAZER and WALLING, JJ. Affirmed.

Trespass for conspiracy. Before COPELAND, J.

The opinion of the Supreme Court states the facts.

Verdict for defendants by direction of the court and judgment thereon. Plaintiff appealed.

*Error assigned,* among others, was in directing a verdict for defendants.

*William D. Grimes,* with him *Bernard H. Feldstein, Gregg & Potts* and *James L. Kennedy,* for appellant.

*Robert W. Smith,* with him *William S. Rial* and *James S. Moorhead,* for appellees.

OPINION BY MR. JUSTICE MESTREZAT, January 8, 1917:

It is conceded that there was no direct evidence which established a conspiracy, and we agree with the learned trial judge that the facts and circumstances in evidence did not warrant the inference of a conspiracy. In its charge the court directs attention to the testimony, which is manifestly inadequate to warrant a jury in finding the existence of the conspiracy laid in the statement. This branch of the appeal was not argued by the learned counsel for the appellant.

The court below held that, notwithstanding the plaintiff had failed to sustain the charge of conspiracy, he could recover from one or all of the defendants if it appeared that the acts of which he complained were wil-

ful and calculated to injure him in his business and were committed with that purpose.

It appears from the evidence that the plaintiff, trading as the Victor Supply Company, was engaged for some years in conducting a general retail store at Crabtree, in Westmoreland County. The Keystone Coal and Coke Company, one of the defendants, has a plant, near Greensburg, at which are employed a large number of persons who live in houses erected on lots owned by the company at a village, near the plant, which is called Bovard. This village is laid out in streets and alleys, and the only means of access to it is a private road leading from the public road. The plaintiff had customers among the employees of the defendant company, who resided in the village, and, prior to January 13, 1915, he solicited orders from them and subsequently delivered merchandise at their homes in the village. He alleges that, on the date named and since, the defendant company by its employees, the other defendants, has prevented him from selling and delivering merchandise in the village. The defendants claim that the plaintiff was in the village by sufferance, that, as the defendant company owned all the houses and lots, which were occupied by its tenants, the company had the right, under the leases, when it deemed it necessary and expedient, to deny the plaintiff admission to the village. The defendants allege that the plaintiff was excluded from the premises because he was, and had been prior to January, 1915, selling and delivering to the company's employees in the village explosives which a rule or regulation of the company, made for the protection of its employees and property, forbids being stored in the dwelling houses of the tenants or used in the mines.

A covenant contained in the written leases, and the one on which the defendant company claims the right to exclude the plaintiff from the village, is as follows: "It is hereby agreed and expressly understood between the party of the first part and the party of the second part,

that any and all streets, lanes or alleys or other highways in and about said premises are private roads and are the private property of the party of the first part, subject at all times to such police rules and regulations as the party of the first part may adopt, the said party of the first part reserving to itself at all times the right and authority to keep out and away from said premises any person or persons whom it may deem necessary and expedient in the exercise of this reserved right of policing the premises and for the peace, comfort and safety of the said first party's tenants, and the party of the second part hereby agrees to any such arrangement, rules or regulations that are made, or that may hereafter be made by the said first party, its agents or superintendent."

The learned trial judge instructed the jury to find a verdict for the defendants, holding that the evidence failed to show any actionable wrong on the part of any of the defendants. He held that any right which the plaintiff had in the premises was necessarily derived from the tenants, as customers, and that, under the terms of the leases and the circumstances of the case, the defendant company had the right to exclude the plaintiff from the village.

We think the construction of the contract was for the court, and that its interpretation is correct. There was no question of fact to submit to the jury in construing the covenant in the lease. Its language is clear and free from all ambiguity, and hence there is no room for construction. As suggested by the court, if the plaintiff had any rights on the property they came through the lessees or tenants, as customers. This is necessarily so and must be conceded. The premises are the property of the defendant company. This includes the streets and alleys as well as the lots and the houses erected thereon. The company owned and had the control and supervision of the property. It was a mining village and was constructed for the use of the defendant company's employees working at its mines. The lease, as is apparent by its terms, was

drawn not only to protect the employees, but also to retain such control and supervision of the property in the defendant company as might be necessary to enable it to use the property for the intended purpose. With this object in view, the above recited provision was inserted in the lease. It declares in part that "any and all streets, lanes or alleys or other highways in and about the said premises are private roads and are the private property" of the defendant company, and reserves to the company "the right and authority to keep out and away from said premises any person or persons whom it may deem necessary or expedient in the exercise of this reserved right of policing the premises and for the peace, comfort and safety" of the defendant company's tenants. This language cannot be misunderstood. It shows that both parties to the lease intended that the streets and alleys of the village should continue to be the private property of the defendant company and that the company should determine who might make use of or be excluded from them. So far as the record discloses the lessees do not deny this to be the correct interpretation of the lease or allege that it does not carry out the intention of the parties, while the defendant company asserts that it does.

We know of no principle of law and have been cited to no decision which prevents the enforcement of this contract. The parties had the same right to contract for the control and supervision of the highways in the village as they had to agree to the terms on which the houses and lots were held by the tenants. The entire premises were the private property of the defendant company. It had the right to impose any lawful terms as to any part of the property, and, the tenant consenting thereto, the contract became obligatory on both parties: Thousand Island Park Association v. Tucker, 173 N. Y. 203, 60 L. R. A. 786. This, of course, assumes that the restriction placed upon the use and control of the highways is clearly imposed by the written contract and not left open to implication. In such case there is no occasion for the appli-

cation of the technical rules of construction, invoked by the appellant to sustain his interpretation of the contract, that the covenant relating to the highways shall be construed most strongly against the owner of the premises, and that the lessee shall not be deprived of the beneficial use of the premises for the purposes specified in the lease unless such construction is unavoidable. It is equally clear that the company cannot be deprived of its control over the highways, as stipulated in the lease, on the ground that the right of way is appurtenant to the leased premises. These reasons, urged by the appellant, have no application in this case if, as we hold, the contract clearly defines the rights of the parties, and grants or reserves to the owner in clear and unambiguous terms the supervision and control of the highways.

We have not been convinced that, under the circumstances, the restrictions placed upon the streets and alleys of the village are unreasonable, nor that the provision of the lease imposing the restrictions offends public policy. If, as we think is apparent, these restrictions on the use of the highways were inserted in the contract for the purpose of protecting the property of the defendant company and to secure "the peace, comfort and safety" of the tenants, they did not invalidate the lease. These were objects about which the parties could properly contract and about which they, in view of the purpose for which the village was constructed, might well be expected to contract. The jury would have been justified in finding, under the evidence, that the plaintiff was delivering to the tenants an explosive for storage in their houses, which was dangerous to the tenants and injurious to defendant company's property and which was forbidden by an order or regulation of the company. This was persisted in for such a length of time as to convince the defendant company and its officers that the plaintiff could not be trusted to go upon the premises. Such conduct clearly justified the plaintiff's exclusion from the premises, and the evidence fails to show that the defend-

ant company exercised its right, under the contract, to prohibit any person from selling and delivering ordinary merchandise on the premises. We may quote in this connection what was so well said by President Judge RICE in an analogous case, Commonwealth v. Shapiro, 41 Pa. Superior Ct. 96, 101: "The case presents the further question of the right of a vendor of goods to drive upon the ways for the purpose of soliciting from the tenants orders for goods......It has not been made clear that a restriction of a private way which would exclude entry upon the land for such purpose would be invalid upon any ground of public policy, nor can we see 'that its unreasonableness is apparent......At any rate, the right of the lessee to accept a lease of the premises with such restrictions of the private way must be conceded, and if he has done so, it is impossible to see upon what principle an entry on the land in opposition to the restriction, without the permission or invitation of either the owner or tenant, and with actual notice of the owner's objection, can be lawfully justified."

Commonwealth v. Burford, 225 Pa. 93, does not aid the appellant's contention, but supports the defendants' position. The lease in that case contained no reference to any public or private ways, and there were no means of access to the residences of the tenants other than over the private ways. It was properly held by the learned Superior Court, affirmed by this court, that the rights of way were appurtenant to the leased premises which could be used by the tenants or any persons visiting them for any lawful purpose. This right to the use of the private ways appurtenant to the land, however, was, as said by the Superior Court, in the tenant "in the absence of an express reservation or agreement on the subject." In the case at bar, there is an "express reservation or agreement on the subject" which expressly authorized the defendant to exclude the plaintiff from the village.

The judgment is affirmed.