# STATE v. VINCIONI

[No. 2990.   March 11, 1925.   On Rehearing
Sept. 4, 1925.]

### SYLLABUS BY THE COURT

1.   Mining property posted by the lessee and operator under sections 3516 and 3517, Code of 1915, included a camp with dwelling houses occupied by the employes as tenants, for ingress and egress to and from which the streets of the camp were necessarily used.   In the absence of proof of restriction upon the right of the tenants to use the streets, one using them to make delivery of goods which the tenants have ordered from him does not incur the statutory penalty for entering such posted property without permission.

2.   Under a complaint charging entry, without permission, of premises operated and posted by Phelps-Dodge Corporation, it was a variance to prove a posting by Stag Canyon Fuel Company.   ·

3.   Sections 3516 and 3517, Code of 1915, contemplated posting of mining property and its consequences only in case the property is being operated, and then by the party operating, whether owner or lessee.

### ON REHEARING

4.   A corporation operating mining property posted under sections 3516 and 3517, Code of 1915, which property included a camp, with dwelling houses, solely for the use of employes, for ingress and egress to and from which houses the streets of the camp were necessarily used, required each tenant to sign a lease prepared by it containing restrictions upon the use and occupation of the premises, but not referring to the streets.  **Held,** that such lease should be construed strictly against the lessor, and as presumably containing within its express terms all intended restrictions, and restrictions upon the use of the streets not expressed are not to be implied. **Held,** further, that one on the street at the invitation and upon such business of the tenant as does not conflict with the restrictions of the lease, is there under the lease, and not in violation of the statute.

Appeal from District Court, Colfax County; Leib, Judge.

Celestino Vincioni was convicted before a justice of the peace, and again in district court, of trespass on posted mining property, and he appeals.   Reversed and remanded, with directions.

A. C. Voorhees and Henry A. Kiker, both of Raton, for appellant.

Milton J. Helmick, Atty. Gen., and J. W. Armstrong, Asst. Atty. Gen. (Ellenwood & Ross and Crampton & Darden, of Raton, of counsel,) for the State.

## OPINION OF THE COURT

WATSON, J. Appellant was convicted before a justice of the peace and again in the district court of Colfax county of a violation of sections 3516 and 3517 of the New Mexico Statutes annotated, Code of 1915, authorizing the owner or lessee of mining property desiring to operate the same and to prevent trespassers from entering thereon to post notices warning all persons from entering upon the. said land without the consent of the owner or lessee, and making it thereafter unlawful for any person to enter upon said premises without such permission. The complaint alleged that the Phelps-Dodge Corporation was operating and prosecuting mining upon the property, had duly posted the same, and that the appellant had unlawfully entered and trespassed thereon without permission from the Phelps-Dodge Corporation.

At the close of the state's case, appellant submitted a motion for a directed verdict and here complains of the overruling of that motion. At that time there was testimony showing, or tending to show, the following facts: The property in question was owned by the Stag Canyon Fuel Company and operated by and under lease to the Phelps-Dodge Corporation. On the property in question was situated the mining camp of Dawson, containing a large number of dwelling houses, a store, bank, schoolhouse, post office, railroad station, hospital, and with streets as in the ordinary town, all of which property was owned and leased as above stated. All of the dwelling houses in the camp were occupied by the employees of the Phelps-Dodge Corporation, as tenants; the streets being necessarily used in going from place to place in the camp, in going to their work, and to reach the outside world. It was not the custom to require traveling men, farmers trading at the store, nor persons coming to buy coal from the corporation to obtain special permission to enter the property; but business

men from Raton and other points were required to register with the clerk. Evidence was received of the posting of notices in the name of the Stag Canyon Fuel Company. To this appellant objected on the ground of variance, and also upon the ground that, under the statute, it is only the party operating the property who may post it. There was evidence that appellant had knowledge of these notices. There was also evidence of posting in the name of the Phelps-Dodge Corporation, but none of knowledge thereof by appellant. Some time before his arrest, appellant appeared and made application for a permit to market or peddle grapes, which request was denied. He thereafter obtained orders for grapes from some of the tenants of the company houses, and, while proceeding to deliver the grapes thus ordered, was arrested on the principal street of the camp.

[1] 1. Upon this record appellant contends that he was entitled to a direct verdict, citing and relying upon Commonwealth v. Burford, 225 Pa. 93, 73 A. 1064. In that case it was held that a statute somewhat similar to ours did not apply under a state of facts quite similar to the facts under consideration. The court reasoned that the lease of a house entirely surrounded by the property of the lessor, situated upon the streets only by means of which the tenant could have ingress and egress to and from the demised house, implied the right to free use of such streets in the absence of any provisions in the lease limiting his right to the use thereof; and, further, since the right to use the streets was appurtenant to the house, it included not only the right of the lessee to use it, but that it might be used by his family and those who, with his permission, visited his home for any lawful purpose.

It is suggested by appellee that the Burford Case was modified by the more recent case of Harris v. Keystone Coal & Coke Co., 255 Pa. 372, 100 A. 130, but in the latter it appears that there had been inserted in the lease controlling reservations regarding the use of the streets. Aside from this, learned counsel for the state do not question the soundness of the

doctrine or decision of the Burford Case, but confine their argument to an attempt to establish controlling distinctions. We may, therefore, safely follow that decision unless some such distinction is shown.

It is pointed out that there was no evidence, as there was in the Burford Case, to show that the employees were paying rent for the company houses occupied by them. But this point cannot be controlling. The necessity for ingress and egress arises from the occupancy, not from the payment of rent. The occupancy as tenants is shown. The right to the use of the streets follows. Any limitation or restriction on that right cannot be presumed, but should have been proven.

It is contended there was no evidence to show that appellant was delivering grapes to any one, or filling the orders of any one who lived upon the premises. The testimony to this point was given by a state's witness on cross-examination. The witness stated as a fact; ''He was starting to unload his load, and he had orders for his carload of grapes in Dawson.'' On further cross-examination it appeared, it is true, that this fact was the conclusion of the witness, but cogent reasons were given by him on which he based the conclusion. In the absence of any objection, and being undisputed, it stands as a part of the state's case.

In the Burford Case, the defendant was delivering ''necessary family supplies'', while in the present case he was delivering wine grapes. Counsel point out this difference, but do not indicate what bearing it should have on the result. We do not recognize any distinction in principle here.

[2] 2, 3. It is contended that appellant, in going upon the street where he was arrested, could not have relied upon any permission or invitation from the company's tenants because of the fact that he had applied for permission to market or peddle grapes and had been refused, and because it was shown he had knowledge of the posted notices. It is to be observed that the notices of which appellant was shown to

have knowledge were those of the Stag Canyon Fuel Company. The introduction of these notices was objected to on the two grounds above stated, and error has been assigned on the ruling. We think that both objections were good. Under a complaint charging appellant with a misdemeanor for disregarding the notices of the Phelps-Dodge Corporation, it was clearly a variance to introduce notices of the Stag Canyon Fuel Company.

[3] Again, it seems plain that the statute contemplates posting and its consequences only in case the property is being operated, and then by the party operating, whether owner or lessee. Hence these notices of which appellant had knowledge were improperly in the case, and we have left for consideration only the fact that appellant applied for permission to market or peddle grapes. Standing alone, this fact does not exclude the theory of reliance by appellant on lawful invitation to the premises.

We conclude that the state rested without having established a prima facie case. Appellant was entitled to a directed verdict. To refuse it was error.

The judgment must therefore be reversed and remanded, with direction to discharge the accused, and it is so ordered.

PARKER, C. J., and BICKLEY, J., concur.

### ON REHEARING

WATSON, J. By the opinion originally handed down, we reversed the judgment solely on the ground that the court erred, at the close of the state's case in chief, in overruling appellant's motion for a directed verdict. By motion for rehearing, the state makes the point that such error was waived when the appellant, instead of standing upon it, offered testimony in his defense. This point is now raised for the first time. In the original briefs the state not only failed to raise it, but joined in the discussion of the merits of the assignment.

[4] Appellee cites 17 C. J. 339, 38 Cyc. 1590, 26 R. C. L. 1083, Walker's Errors in Criminal Proceedings, 28, and many decisions. Appellant cites decisions, many of which are reviewed in note to Cincinnati Traction Co. v. Durack, 14 Ann. Cas. 222. We do not see substantial difference in the views of counsel. Neither counsel has cited any decision of this court. From a cursory search of our own reports, we find that error has been many times assigned in this court upon the refusal of the trial court to direct a verdict of not guilty on motion interposed at the close of the state's case. On one occasion (State v. Ellison, 19 N. M. 428, 144 P. 10) this court used language which might be urged as contrary to the doctrine of waiver urged by the state. On other occasions, such assignment was considered and overruled, because it was found that there was substantial evidence for the jury. State v. Wilson, 25 N. M. 439, 184 P. 531; State v. Taylor, 26 N. M. 429, 194 P. 368; State v. Ulibarri, 28 N. M. 107, 206 P. 510. On at least two occasions the assignment was considered and upheld, where the defendant did not stand upon his motion, but interposed his defense. State v. Corral et al., 27 N. M. 535, 203 P. 533; State v. Craig, 28 N. M. 110, 206 P. 513. In none of these cases does it appear that the question of waiver was either urged or considered.

The weight of the authorities and the reasoning of the decisions supporting the doctrine of waiver impress us sufficiently that, if necessary to the determination of this case, we should give to the question the most careful consideration. It is unnecessary, however, in view of the conclusion which we have reached upon this motion for rehearing. At the close of the entire case, appellant moved the court for a directed verdict in his favor because of the insufficiency of the evidence to sustain a verdict against him, and he here urges as error the overruling of that motion. At appellee's earnest insistence, we have reviewed the evidence in its entirety, including the rebuttal, and are of the opinion that the same would not support a ver-

dict of guilty, and that the court erred in overruling appellant's motion made at the close of the case.

In the additional evidence adduced after the state first rested, we find but one matter material to this discussion. The state offered evidence tending to show that the tenants and employees of the company held under leases containing the following provisions:

"That said lessor hereby leases to the said lessee * * * those improvements, consisting of a certain dwelling * * * and the outbuildings appurtenant thereto, together with the surface ground occupied by said buildings and improvements. * * * for the temporary occupation of the lessee and his family only, and to provide 'him a temporary dwelling place during his employment with' the lessor."

"This lease is for the term of one month only, and thereafter from month to month until terminated by the lessee, and is subject to the absolute right of the lessor to terminate the same and all rights of the lessee thereunder at any time before expiration, which right of termination is expressly reserved to the lessor. * * * The lessee shall not sublet the premises or any part thereof, or assign this lease, nor use or permit the premises to be used for any purpose except for a dwelling place, nor take any cotenants, or any boarders, who are not the employees of the lessor, nor permit any person or persons, other than members of the family of the lessee, to use or occupy said premises, except with the written consent of the lessor first 'had and obtained. It is understood and agreed that the lessor owns and uses the leased premises herein described as a part of its plant, and in connection with the operation of its mines, and for the purpose of leasing only to those whose occupation will facilitate and be for the convenience of such operations."

Upon these provisions the state relies to distinguish this case from Commonwealth v. Burford, 225 Pa. 93, 73 A. 1064, claiming that, in view of these restrictions in the leases, Harris v. Keystone Coal & C. Co., 255 Pa. 372, 100 A. 130, becomes applicable. In the Burford Case the leases, in so far as described, are very much like the leases here involved. The court said:

"The owners leased the several 'houses to various tenants. The written lease in each case was for the term of one month; it designated the' lessee, the amount of rent to be paid, the number by which the house was known, provided for the payment of the rent punctually, in case of holding over, the tenancy should be for another month and from month to

month.  The written lease contained no reference to any pub-
lic or private way."

In the Harris Case it is said with reference to the
lease there in question:

"It declares in part that 'any and all paved streets or al-
leys or other highways in and about the said premises are
private roads and are the private property' of the defendant
company, and reserves to the company 'the right and author-
ity to keep out and away from said premises any person or
persons whom it may deem necessary or expedient in the ex-
ercise of this reserved right of policing the premises and for
the peace, comfort, and safety of the defendant company's
tenants."

What is there in the lease here in question which
can be construed as restricting the right of the ten-
ant to use the streets of the town or camp in the usual
manner of use by town dwellers?  The streets are not
mentioned, nor the appurtenances.  The "premises"
are not to be sublet, nor the lease assigned.  No board-
ers are to be received except the employees of the lessor.
None but members of the tenants' families are to be
allowed to use or occupy the premises without first
obtaining the written consent of the lessor.

Certainly some use of the streets was anticipated.
It is fair, at least, to assume an intention that the
employee may use them in going to and from his work.
Other necessary uses suggest themselves.  The wife
may have business at the store and at the post office.
The children must attend school.  The family may
have occasion to visit the outside world, and must use
the streets to reach the railroad station or the public
roads.  These are only ordinary human necessities,
and must have been anticipated.  But there are other
necessary and usual contacts with the outside world
which require the ingress of those with whom the ten-
ant and his family have business.  Sickness may re-
quire the physician.  Protection of life or property
may require the peace officer.  It would hardly do
to say that the physician or the sheriff, summoned
on such business, or the person delivering a purchase
made by the tenant or his family, was being permitted
to use or occupy the demised premises.  Use and oc-
cupation is a term every day employed in dealing

with the relation and the law of landlord and tenant. If it has ever been so construed, appellee has failed to point out the occasions. If these visits of the physician, the sheriff, or the deliveryman cannot be said to violate the express prohibition against use and occupation of the premises by others than the family, how can they be said to be excluded by the lease, which contains no restrictions whatever as to the use of the streets?

Appellee urges that the provisions of the lease, the recitals therein, and the circumstances shown require a liberal construction, to give effect to the intention of the lessor to retain exclusive control over its streets. The leases are uniform. They are prepared by the lessor. Every tenant is required to contract in those terms. The contract is unusual in the restrictions upon the use of the demised premises. Familiar rules of construction require such a lease to be construed strictly against the lessor. The terms are dictated by it. The lessee has no voice. He can take the lease or leave it. Under such circumstances, why should we add by construction to the restrictions expressed? Should we not, rather, presume that the lessor, having the power and the opportunity, and fully alive to the conditions, has expressed in the lease all that it considers necessary for the protection of its property?

As pointed out in Commonwealth v. Burford, supra, the statute makes public and punishable what was theretofore a private wrong. It is designed merely for the protection of property. The owner may waive it as to the public in general by not posting. He may waive it as to particular persons by granting permission to enter. It does not affect his right to make such contract as he may see fit regarding the use. In this case the owner has seen fit to build a town upon it, and to lay out streets therein, and to lease the houses therein, upon terms implying the right of the tenants to the use of the streets, without incorporating in the contract any restriction upon such use. So doing, it has waived, or rather contracted away, the right to prohibit ordinary use of the streets by its tenants. One who is on the streets at the invitation and upon such

business of the tenant as does not conflict with the restrictions of the lease is there under the contract, and not in violation of the statute. Alabama Fuel & Iron Co. v. Courson, 212 Ala. 573, 103 So. 667, upon which appellee places great reliance, we do not consider in point.

Appellee suggests that our original opinion may justify an inference that it is necessary to a conviction that defendant be shown to have knowledge of the trespass notices. A reading of the opinion will disclose that what we said on the subject of appellant's knowledge was merely in answering a contention of the appellee. It is perhaps well to say, however, that we do not consider that question.

It is also suggested that our original opinion is ambiguous as to whether we reversed the case on the ground of variance. We did not. We held that notices posted by Stag Canyon Fuel Company were not admissible under a complaint alleging operation of the property by Phelps-Dodge Corporation. These were the only notices of which appellant was shown to have knowledge. In argument, appellee made a point of such knowledge. We merely excluded the notices from consideration on the ground of variance, which disposed of appellee's claim as to appellant's knowledge. It was error to admit the notices. Whether it was reversible error, in view of the subsequent proof of posting by Phelps-Dodge Corporation, we did not decide.

Having now considered, as appellee insists that we should, all evidence in the case, we reach the same conclusion as when we considered only the state's evidence in chief. Appellant was entitled to a directed verdict when the state finally rested, as well as when it first rested. We therefore adhere to our original disposition of the case.

PARKER, C. J., and BICKLEY, J., concur.