American Coat, Apron and Towel Supply Co., Appellant, v. Grant Building, Inc.

Argued April 28, 1931.

Before Trexler, P. J., Keller, Linn, Gawthrop, Cunningham, Baldrige and Drew, JJ.

*Arthur B. Van Buskirk,* and with him *George S. Goldstein* and *Reed, Smith, Shaw & McClay,* for appellant, cited: Conneaut Lake Ice Company v. Quigley, 225 Pa. 605; Thousand Island Park Association v. Tucker, 173 N. Y. 203; Harris v. Keystone Coal & Coke Company, 255 Pa. 372; Nester v. Brewing Company, 161 Pa. 473.

*E. B. Strassburger,* and with him *Messrs. McKenna & McKenna,* for appellees, cited: Walsh v. The Bourse, 15 Pa. Superior Ct. 219; Donovan v. Pennsylvania Railroad, 199 U. S. 279.

Opinion by Keller, J., July 8, 1931:

The Grant Building is a new, modern thirty-seven story office building located in the business district of Pittsburgh. It was opened to tenants in February, 1929.

All leases for rooms in the building contain the following provisions:

"The above letting is upon the following terms and conditions:

*Rules and Regulations.*

6. The rules and regulations in regard to Grant Building, printed upon the reverse of this lease, and such alterations, additions and modifications thereof as may be from time to time made by lessor, shall be considered a part of this agreement, with the same effect as though written herein, and lessee covenants that said **rules and regulations** shall be faithfully observed by lessee, the employees of lessee and all persons invited by lessee into said building. The right being hereby expressly reserved by lessor to add to, alter, modify or rescind from time to time, said rules and regulations. The lessor, however, shall have the right to change said rules and regulations and to waive in writing any or all of said rules and regulations in the case of any one or more lessees and the lessor shall not be responsible to the lessee for the non-observance or violation of any of said rules and regulations by any other lessee."

Among the rules and regulations so printed on the back of the lease is the following:

"22. Only persons authorized by the Lessor will be permitted to furnish towels and other similar services to tenants, and only at hours and under regulations fixed by the lessor."

Incidental to the erection and operation of the building, the owner installed a laundry for the purpose of supplying towels to its tenants; the purpose in view

being to give better service to the tenants and better to discharge its responsibility with respect to those entering the offices on such service. The laundry is conducted for profit but is run exclusively for tenants of the building. No complaint is made that the prices charged for this laundry work are excessive or more than those obtaining in outside laundries.

The plaintiff is engaged in the business of renting cabinets for supplying towels, etc., to customers in Pittsburgh, under yearly contracts. Seven of its customers became tenants of the Grant Building. It was notified by the management of the Grant Building on July 22, 1929 that it could continue to deliver towels at reasonable hours to' its customers under its existing contracts until the respective expirations thereof, but thereafter would not be permitted to deliver towels in the building. On July 25, 1929 it filed this bill praying for an injunction restraining the defendants from interfering with or refusing to allow it to deliver towels to its customers in the Grant Building, or from hindering the renewal of such contracts, and soliciting and making new contracts with tenants of said building for the delivery of towels. A preliminary injunction was granted, which on final hearing was dissolved and the bill dismissed. Plaintiff appealed.

At the outset appellant contends that the findings of fact of the chancellor, approved by the court in banc, are not within the rule that such findings have the force and effect of the verdict of a jury and will not be disturbed except for clear error, because the judge who made the findings was not the judge who heard the testimony orally and saw the witnesses— (Judge MARTIN died before final hearing). It overlooks the fact that prior to the amendments to the Equity Rules of January 15, 1894, hearings in equity were not had before a judge, but before masters, whose report even on the facts was not conclusive

(Phillips' App., 68 Pa. 130, 138), unless approved by the court (Sproull's App., 71 Pa. 137); and that in England and some other jurisdictions evidence was received by way of depositions and even affidavits. But the point is immaterial, for a careful review of the evidence in the case leads us to agree with the findings of fact of the lower court. It is not necessary to restate them. Reference is hereby made to them as if incorporated herein. On the basis of the facts thus found we shall discuss the legal questions raised by the appeal.

1. We do not understand that Regulation 22, appearing on the back of the lease and incorporated into it by clause 6, supra, is equivalent to an agreement or covenant that persons (in the plural) other than the lessor itself shall be authorized to furnish towels to the tenants of the building. The word "only," as it appears in the 22nd rule or regulation, is a word of restriction or exclusion—of restriction as to that which it qualifies, and of exclusion as to other things (46 C. J. 1105). One of its primary meanings as defined in the Century Dictionary is "Nobody else than;" and in Webster's International Dictionary, "No other than;" its meaning in this regulation being, "No persons other than such as may be authorized by the lessor will be permitted to furnish towels," etc. It excludes all who are not authorized, but is in no respect a covenant or agreement that "persons" other than the lessor will be authorized to furnish towels, etc. There is no doubt that the plaintiff—except as respects fulfilling its existing contracts—was not so authorized.

2. The regulation was in the circumstances of the case reasonable, valid and enforceable.

The court found, (18) "Grant Building, Inc., has installed in Grant Building a fully equipped modern laundry plant, and pursuant to the terms of its leases

with its tenants, as part of the service in said building supplies towels to its tenants at a reasonable cost by uniformed employees and attendants and at regular fixed times,'' and (19) ''The distribution of towels by Grant Building employees makes for the efficient operation of Grant Building and the convenience of its tenants and is in accordance with the best practice in modern office buildings. It avoids confusion in the operation of the building, annoyance to the users of the building, congestion in the elevator and halls, the presence of unsightly receptacles, controls unauthorized entry into offices, and promotes the safety of the property of tenants therein.'' No question relating to monopoly or unlawful restraint of trade arises here. The regulation applies only to the corporate appellee's own building on its own land, was not adopted arbitrarily, but for good and sufficient reasons incidental to and connected with the efficient management and operation of its building, and was in force when all its leases were entered into. The defendant company had no knowledge of the plaintiff's contract with its customers, when the regulation was made, or even who its customers were, and did not know or foresee that any of the plaintiff's customers would become tenants of its building. The regulation was not directed against the plaintiff or any other laundry concern, with intent to do it harm or injure its business or deprive it of trade but solely by way of the efficient conduct of the defendant's own business of operating its building and as ancillary to the relation between landlord and tenant (United States v. Addyston Pipe & Steel Co., 85 Fed. 271, 281, affirmed 175 U. S. 211). Hence malice is not involved in the regulation. The defendant is not a competitor of the plaintiff, for it does not seek or do any laundry business apart from the efficient operation of its own building; and the regulation does not deal with the necessities of life,

but only with conveniences or adjuncts to the efficient conduct of business offices. The case, in our opinion, is within the principle recognized and upheld by our Supreme Court in Harris v. Keystone Coal & Coke Co., 255 Pa. 372, which was followed in Alabama Fuel & Iron Co. v. Courson, 212 Ala. 573, 103 So. 667; and by this court in Walsh v. The Bourse, 15 Pa. Superior Ct. 219.

Appellant founds its case chiefly on the decision in Thousand Island Park Assn. v. Tucker, 173 N. Y. 203, 65 N. E. 975, where a park association laid out a tract of 800 acres of land for camp meeting purposes and for summer residences, and after houses had been built on the lots by lessees under ninety-nine year leases, adopted a regulation which restricted the lessees, in purchasing supplies for consumption, to stores operated by the association. The court held the regulation to be unreasonable and unenforceable. But two things are to be noted: (1) The regulation dealt with the necessities of life and was attempted to be applied, in what was in effect a community, to persons who had built their own homes for summer residence; (2) the regulation was adopted after the leases had been made. It was this latter circumstance that ruled the case against the park association; for the court said (p. 977) ''When the plaintiff leased or granted the cottage plots, it might have subjected the leases to such conditions and the tenants to such covenants as it saw fit to impose. If it had been provided in the leases that the tenant or occupant should purchase all his supplies from the plaintiff, or from such shop or market as it might establish, and should obtain no supplies from any other source, I am not prepared to say that such a covenant would not be enforced, or rather, that damages could not be recovered for its violation. The exclusive privilege reserved by the landlord would fairly be a part of the consideration for the demise of

the premises. But to impose such a restriction on the tenant, some condition or covenant to that effect must be found in the lease. Otherwise the dominion of the tenant is as absolute during the demised term as that of the owner previous to the demise." See, however, Round Lake Assn. v. Kellogg, 141 N. Y. 348, 36 N. E. 326; Chautauqua Assembly v. Alling, 46 Hun 582. So, also, in Williams v. Lubbering, 73 N. J. L. 317, 63 Atl. 90, cited by appellant, the court in considering the right of a tenant of an apartment house to use an entrance way for the delivery of ice, etc., said that the landlord cannot deny him the use of any of the ordinary adjuncts of such apartments, "unless it be otherwise stipulated at the time of taking the apartments."

3. No privity of contract existed between the appellant and the corporate defendant. Any right which the former had to do business with tenants of the Grant Building in that building was derived through the tenants: Harris v. Keystone C. & C. Co., supra; Com. v. Shapiro, 41 Pa. Superior Ct. 96; and, except to the extent of fulfilling its existing contracts with such tenants, plaintiff's agents and employees were not invitees, but merely licensees as respects the Grant Building. In their efforts to renew contracts or solicit business they were not calling on the tenants of the building for some purpose connected with the business in which the latter were there engaged, but in furtherance of the plaintiff's laundry business; and solicitors for business who call on tenants of a building are not invitees but mere licensees (Gasch v. Rounds, 93 Wash. 317, 160 Pac. 962; Stanwood v. Clancey, 106 Me. 72, 75 Atl. 293; Konick v. Champneys, 183 Pac. 75 (Wash.), 6 A. L. R. 459; Com. v. Shapiro, supra, p. 102); and may be excluded under reasonable regulations of the landlord, from attempting to pursue their business in the building, if the lease between the parties so pro-

vides and the regulation is based on good and sufficient grounds connected with the efficient management and operation of the building.

4. Strictly speaking the Act of June 19, 1871, P. L. 1360, is not involved in this case, for the plaintiff, while averring that Grant Building, Inc., had set up a laundry in the Grant Building, and was supplying towels to its tenants, did not allege, either in its bill or amended bill, that it was without authority so to do, which is the basis for a private citizen invoking said act of assembly: Gring v. Sinking Spring Water Co., 270 Pa. 232; Alexander v. Wilkes-Barre Anthracite Coal Co., 254 Pa. 1; Williams v. D. L. & W. R. Co., 255 Pa. 133; Blankenburg v. Phila. R. T. Co., 228 Pa. 338; Vinton Colliery Co. v. B. & Y. C. R. Co., 226 Pa. 131; or ask that it be enjoined from so doing. But apart from whether it is properly before us, we are of opinion that the operation of the laundry as limited and described in the evidence, and under the findings of the court, is so intimately connected with, so incidental or auxiliary to, the operation of the defendant's building as not to be beyond the corporate and charter powers of the corporate defendant. "Corporations may transact, in addition to their main undertaking, all such subordinate and connected matters as are, if not essential, at least very convenient to the due prosecution of the former": Malone v. Lancaster Gas, Light & Fuel Co., 182 Pa. 309, 322. It is well known that in the operation and management of great modern office buildings, for the convenience of the tenants electric light is manufactured on the premises, a corps of janitors, window cleaners and other workers are employed, lunch rooms are operated, and other activities engaged in which if done apart from the building would be outside the corporate powers of the owner of the building, but when done in connection with the building and limited in their scope and pur-

pose to the convenience and comfort of the tenants are ancillary to and in furtherance of the corporate purpose. If the sale of appliances for the use of gas, is within the corporate powers of a corporation chartered for the manufacture and supply of gas for light and heat (Malone v. Lancaster Gas Light & Fuel Co., supra), and if the building of saw mills and the construction of dwellings and boarding houses and of a hotel for the accommodation of those having business relations with it, was within the powers of a corporation chartered to aid in the development of minerals and other materials and to promote the clearing and settlement of the country (Watt's App., 78 Pa. 370), we think the conduct of a laundry limited to supplying tenants with towels, under the circumstances of this case, is, under modern business conditions, within the powers of the corporate defendant. Department stores are now conducting restaurants, beauty parlors and hair dressing establishments as part of their activities. Transportation companies are operating restaurants, barber shops, soap and towel cabinets, (similar to the plaintiff's), shoe-shining stands and pay toilet rooms, under the principle that "railway companies may erect refreshment rooms and book stalls and adopt other similar measures for both providing for the comfort of their customers and adding to their own receipts": Malone v. Lancaster Gas Light & Fuel Co., supra. Hotels have public stenographers, news stands, cigar and tobacco stores, barber shops and laundries in connection with their main business. All of these are intended to produce revenue, but their main purpose is the comfort and convenience of patrons. We think the present case falls within the same class and that the regulation complained of is incidental to the efficient operation and management of defendant's building and with the ultimate purpose in view of safety, conven-

ience and efficient service to the tenants of the building.

The assignments of error are overruled. The decree is affirmed at the costs of the appellant.