[No. 3123. Feb. 9, 1929.]

[Rehearing Denied May 7, 1929.]

STATE v. STEWART.

[277 Pac. 22.]

See, also, 32 N. M. 242, 255 P. 393.

Holt & Sutherland, of Las Cruces, for appellant.

R. C. Dow, Atty. Gen., and F. H. Patton, Asst. Atty. Gen., for the State.

OPINION OF THE COURT

BICKLEY, C. J. Wesley Stewart was indicted for the murder of G. I. Maloy, which is alleged to have occurred on August 21, 1921.

At the first trial of the cause, defendant was convicted of murder in the second degree and appealed. The judgment in the trial court was reversed and the cause remanded for a new trial. On the second trial, the defendant was again convicted of murder in the second degree, and it is from this conviction that he appeals. The disposition of the appeal from the first conviction is reported in 30 N. M. 227, 231 P. 692. A general state-

ment of the facts is there set forth. Many errors are assigned. We will consider first those which grow out of matters dealt with in the former appeal.

■ The first, and one of the more important, involves the admissibility in evidence of the purported dying declaration of the deceased. In our opinion, in the former appeal, the requisites for admissibility of such a declaration were set forth, and it was held that the record did not show facts and circumstances which would support a finding by the court that the deceased Maloy believed that his wound was fatal when the statement was made, nor could the belief be inferred from the nature of the wound itself and the circumstances existing at the time the statement was made, and held that the trial court erred in admitting the declaration upon the evidence introduced.

Evidence upon this specific point was introduced at the second trial, and it was objected in substance that the evidence did not sufficiently show a belief on the part of the declarant that death was imminent.

■ The court overruled the objection, requiring, however, that the two interlineations commented on in our opinion on the former appeal be explained. One of these interlineations was withdrawn by the district attorney, and the evidence concerning it stricken, and the jury charged not to consider the testimony of the witness regarding the withdrawn interlineation. Counsel for appellant claims that notwithstanding this situation defendant had suffered prejudicial error by the previous adverse ruling, because the witness had been permitted, over objection, to testify that Maloy had made the statement in question.

"The general rule is that where evidence erroneously admitted during the progress of the trial is withdrawn or stricken out by the court, the error is cured."

17 C. J. 325, § 3666.

Also:

"The rule is recognized in a large number of decisions that error in the admission of incompetent evidence may ordinarily be cured by instructions to disregard the evidence improperly admitted."

17 C. J. p. 326 § 3667.

The evidence alleged to be objectionable having been timely withdrawn, stricken, and by the court charged out of the case, and not being of a character to come within the exceptions to the rule, no prejudicial error appears on account of the proceedings relative to the interlineation. The dying declaration was received in evidence and read to the jury as follows: ·

"Picacho, Friday, August 12, 1921.·

"As I was going to my work I saw Mr. Stewart walk off the bridge about three hundred yards distance from where I was and disappear in the corn field. Near where I had a job to do I rode up to the fence, leaned forward on my mule and called to him in a respectable manner to come out and talk the matter over with me and settle the matter like men. He answered saying throw up your hands or I will shoot you. I told him that I wouldn't throw up my hands to no man and he then shot me without hesitation. I couldn't see him when he shot me or any time afterwards.

"[Signed] Ditch Boss George I. Maloy.

"Witnesses: T. C. Sexton and Oscar McElyea."

Not only was the court satisfied in the exercise of the proper discretion that the essential elements to render the declaration admissible existed, but the jury were instructed as to said dying declaration as follows:

"There has been introduced in evidence what purports to be the dying declaration of the deceased, G. I. Maloy. Dying declarations are admissible in evidence when they are shown to have been made under a realization of certain approaching death. When a dying declaration is admitted in evidence by the court, it is for the jury to consider and weigh such statement by the same rules as any other evidence in the case, and to give it such weight and credence as they deem it entitled to; but, you are further charged that you may not consider the dying declaration offered in this case for any purpose whatsoever unless you believe from the evidence beyond a reasonable doubt that at the time it was made by the said G. I. Maloy, prior to his death, it was so made by him under a realization of certain approaching death."

So we must assume that the jury either disregarded the declaration or deemed that a sufficient foundation had been established to warrant its consideration. After a careful consideration of the record and argument of counsel, including a review of the objections upon constitu-

tional grounds, we conclude that there was no error in the admission of the dying declaration.

■ A witness for the state was permitted to have his recollection refreshed, as to the time of his discovery of a certain physical condition, by having read to him portions of his testimony at the former trial. In Billingslea v. State, 85 Ala. 323, 5 So. 137, in similar situation the court decided:

"Refreshing recollection of witness by memorandum.—A witness, being questioned as to the time of the commission of the offense charged against the defendant, may refresh his memory by reading a memorandum of his testimony on a former examination, which was written down and subscribed by him at the time; and may testify as to the time as thereby shown, although he has no independent recollection of it."

That such method of refreshing witness' recollection is frequently resorted to, see First and Second Decennial Digest: Witnesses, Key 255 (9). This point is ruled against appellant.

■ Appellant's point No. 2 is based upon the alleged erroneous exclusion of testimony sought to be elicted from the witness Roger Mayfield upon cross-examination. The witness on direct had detailed a conversation with deceased about shutting off the water, which was the subject of a bitter controversy between appellant and deceased. The cross-examination, rejected, related to another and different conversation concerning which witness had not been interrogated and to which the witness had not referred. There was no error in the rejection. The witness could be cross-examined on all matters which were pertinent to the conversation to which he had just testified, but here he was interrogated as to a separate and distinct transaction which was not covered on his examination in chief. In the case of Johnson v. Wiley, 74 Ind. 233, the court said:

"The appellee had not asked the witness any question concerning the conversation called for by appellant's cross-examination, and the witness had not stated it. The appellant had no right, therefore, to elicit that conversation upon cross-examination, for it was not a matter brought out upon the examination-in-chief. It is well settled that a cross-examination must be confined to the subject-matter of the original examination."

If the appellant desired to show the attitude of the deceased toward appellant by another and different conversation, it was a part of his case and not proper subject of cross-examination. See, also, State v. Archuleta, 29 N. M. 25, 217 P. 619. The correctness of the court's ruling depends on whether the conversation refused was so connected with the matters testified to on the direct as to make it part of a general and continuous subject or transaction. The trial judge is clothed with a large discretion in the application of the rule. We are unable to say that there was any abuse of the discretion of the trial judge in the ruling made. It is also to be observed that appellant called this witness in his own behalf, and that he testified to the statement which was excluded on cross-examination of such witness.

Appellant's fourth point is based upon the alleged erroneous admission upon redirect examination of testimony by the state's witness Oscar McElyea, as to reasons why one McDaniels left the country. The cross-examination of the witness discloses the following questions and answers:

"Q. And what about Mr. McDaniels, do you know him? A. I know him.

"Q. Did you have anything to do with his leaving here before this case was tried? A. I didn't.

"Q. You knew that he left shortly before the trial, didn't you? A. Yes; I heard he left.

"Q. You don't know how he happened to be induced to go? A. No; I don't. I don't know just when he left, but about the time."

Upon redirect examination the witness was asked to tell what he knew about McDaniels leaving. The witness was permitted to testify that McDaniels told him before he left that he was getting some money to leave; that he would tell all about the case; that he knew all about it, and so forth; that he did not tell him where he was getting it or from whom; that he (the witness) did not give him any money; and that he did not know of any person interested in the prosecution who gave him a dime to leave. The evidence was admitted, and the court refused to strike

it out for the reason that it was invited by the cross-examination. We find no fault with the court's ruling.

Upon cross-examination, the witness McElyea was asked as to whether or not on the morning of the killing, and shortly before it occurred, he had ordered deceased to go down and close appellant's ditch. The question, answers, and rulings are thus stated in appellant's brief: "Did you, or not, have such a conversation with Mr. Maloy as to that water that morning?" whereupon he *volunteered* the following statement, *which was not responsive,* to-wit:

"While I was there, over to Mr. Maloy's, he was eating breakfast, and the question came up about Stewart at the table there where he was eating, about Stewart taking water, and he said when he ate breakfast he was going down there, and if he was taking water he was going to talk the matter over with him and settle it with him; said I ain't going to have any more trouble with Stewart; that he would not cut it off, and said, if I were you I would take it to court, provided he would not pay for it, and said I ain't afraid but what I can settle that up with Stewart all right (Tpt. 295). Upon redirect examination (Tpt. 312) the witness was asked to repeat the conversation with Maloy on the morning of and preceding the fatal encounter. Objection was interposed and overruled by the court for the assigned reason *that it was invited by the cross-examination.*"

The claim is that the court erred in overruling the motion to strike out this evidence because it related to a conversation with the deceased without the presence of the defendant, etc., and was not rendered admissible because of the fact that the testimony was brought out by appellant on cross-examination, because appellant says the testimony of the witness was "a purely voluntary statement, not responsive to question." We are unable to agree with appellant. When the testimony was elicited by the appellant upon cross-examination, no effort was made to check the witness in his answer, on the ground that he was volunteering unresponsive matter, and no objection made that it was not responsive. We think the ruling of the court was correct.

By his eighth point, appellant complained of the overruling, the objection to, and motion to strike out, testimony of the witnesses Roger Mayfield and Anna Luther, as to reputed statements made to them by the

deceased when they found him lying in the weeds by the roadside, about 15 minutes after the shooting. Each of them testifies, in substance, that the deceased stated to them that appellant had shot him from the corn-field, and that he (the deceased) was unarmed. A motion was made to strike out all the testimony of said witness, upon the subject of said statements, upon the ground that same did not constitute a part of the res gestæ, and the court overruled the motion upon the ground that the testimony had gone in without objection. Counsel for appellant say:

"The statement of the court was correct—but the record shows that it was not until the completion of the cross-examination of the witness referred to, that it became apparent that at least ten or fifteen minutes had elapsed between the time of the shooting and the time of the alleged conversation with deceased."

Appellant does not challenge the general rule that a motion to strike evidence, admitted without objection, is addressed to the discretion of the court, as frequently decided by this court. See Priestley v. Law, 33 N. M. 176, 262 P. 931. But he claims to come within the exception that if the question, when propounded, appears unobjectionable, the answer is to be subsequently stricken when shown to be incompetent. The sole argument of appellant to show that what seemed to be competent evidence, when admitted, was discovered to be incompetent on the cross-examination, is the circumstance of the lapse of time between the shooting and the time of the conversation (10 or 15 minutes). In State v. Buck, 33 N. M. 334, 266 P. 917, we recently quoted from authorities to the effect that time alone is not the determining factor as to the admissibility of such evidence. So it appears that appellant's discovery did not avail to change the situation. Furthermore, under our ruling ·in the opinion on rehearing in Priestley v. Law, supra, we do not think the situation comes within the exception there mentioned. The state, seeking to introduce evidence of statement as a part of the res gestæ, should by proper objection at the time be put to affirmative proof that the statement was res gestæ.

A witness, John Bingham, was permitted to testify in substance that two or three days before the shooting, appellant visited his bank in Las Cruces, and told him that he (appellant) was having trouble in the Picacho district with some of Mr. Bingham's friends, and that he had his shotgun ready for them; that when he inquired for names, the appellant replied that they were friends of Bingham's and of the bank. The witness had testified, without objection, that the deceased G. I. Maloy, J. W. Denny, and Oscar McElyea were friends of the witness and customers of his bank, and lived in the Picacho district, and knew that they were users of water from Picacho canal; that Maloy was the majordomo, and the appellant was a water user from the same canal. The witness was then asked what statement appellant had made to the witness on Tuesday before the killing. This was objected to on the ground that proper foundation had not been laid to make it admissible, and "because it has not been made to appear that the conversation related specifically or even directly to the deceased Maloy." The objection being overruled, the witness answered:

"He told me that he had been having trouble with some of my friends across the river, and that he was going to get them, and he was fixed to get them, that he had his old gun fixed and he would go after them; and I did ask him the names of those men, and he answered that question by telling me they were friends of mine and good friends of the bank."

The rule in this jurisdiction is that a threat of an indefinite nature, in that the name of the person against whom the threat is made is not mentioned, is nevertheless admissible where, as in this case, it is made only a short time before the homicide, and is made under such surrounding circumstances as to point with reasonable certainty to the deceased. See State v. Todd, 28 N. M. 518, 214 P. 899; State v. Bailey, 27 N. M. 145, 198 P. 529.

"The modern rule is to admit generic threats or threats directed toward a class and leave their weight for the jury."

McDaniel v. State, 8 Okl. Cr. 209, 127 P. 358.

A threat being directed to a class of persons to which deceased belonged, evidence was not objectionable

for indefiniteness. Montgomery v. State, 160 Ala. 7, 49 So. 902.

The fact that the witness testified that he and the bank had other friends in the Picacho district, besides those he had named, may have made the inference that the deceased was the one referred to too remote, but it did not render the hostile statement inadmissible; whether it related to the deceased, and its import in the connection with which it was uttered, being for the jury.

It is claimed that the court committed error in overruling motion to strike questions propounded to appellant upon cross-examination relating to an alleged letter to one Mrs. Ryan, and relative to an alleged conversation with one McDaniels while appellant was in jail. Appellant says that by the questions thus propounded, counsel for the state sought to create the impression that while in jail, appellant had written a letter to one Mrs. Ryan, endeavoring to manufacture testimony for himself, and that he had conferred with McDaniels upon the subject of compensating the latter for giving perjured testimony. No objection was made when the questions were propounded. After answers were given, counsel for appellant moved to strike the questions asked the witness. The answers were favorable to appellant, as they refuted any inference of improper conduct on the part of the witness. If the questions complained of were propounded for the purpose of laying the foundation for impeachment, the fact that the state did not produce impeaching testimony could not result in prejudice to the appellant. A motion to strike evidence which has been admitted without objection is addressed to the discretion of the court. See Priestley v. Law, 33 N. M. 176, 262 P. 931, and cases cited. We therefore do not consider that this assignment of error is well taken.

By his point No. 11, it is claimed that the court erred in overruling objections to questions propounded to appellant upon cross-examination. The questions, answers, objections, rulings, are as follows:

"Q. Now, then, at the same time and place, did you also make the statement to Mr. Denny that you were going to stir up one of

the worst troubles that Picacho had ever known? A. Mr. Denny told me—

"Q. Did you? A. No, Sir.

"Mr. Sutherland: Now go ahead.

"Mr. Newell: That is for the purpose of impeachment.

"Mr. Sutherland: He can explain his answer.

"The Court: No.

"Mr. Sutherland: We object on the ground that proper foundation was not laid for the question and answer and ask that it be stricken.

"The Court: Overruled.

"Mr. Sutherland: Exception. That same was not in proper form to put an impeaching question.

"The Court: Overruled.

"Mr. Sutherland: Exception."

We are not favored by any argument in support of this assignment, and we perceive no error in the ruling of the court.

It is claimed by appellant in his point No. 12 that the court erred in overruling objections to questions propounded by the state upon cross-examination of the witness Roger Mayfield. The witness had testified that he had informed appellant of certain threats made by the deceased against appellant. The witness did not seem sure as to the day of the week the conversation occurred. The district attorney apparently sought to bring out further portions of the conversation. When it was developed that the conversation referred to in the question on cross-examination was a different conversation from the one brought out on direct examination, the court, on request of counsel for appellant, instructed the jury not to consider the answer of the witness. In view of the proceeding, we see no prejudice to the appellant and no error.

Point No. 13. Error in overruling objections to questions propounded to the witness J. W. Denny on rebuttal. This witness testified that he was a commissioner of the Picacho Ditch at the time of the shooting; that in June, 1921, he had a conversation with appellant. He was

asked if appellant told him in substance that he was going to stir up one of the worst troubles that the Picacho county had ever known. Appellant had previously, on cross-examination, denied that he made this statement to Denny. The objection was:

"Mr. Sutherland: Object to that as incompetent, irrelevant and immaterial; no proper foundation has been laid, and an attempt to impeach on a collateral matter."

In view of other testimony in the case, we do not think it referred to a collateral matter, and we find the foundation laid sufficient.

Appellant complains by his point No. 14 that the court erred in refusing his requested instruction No. 4, to the effect that no inference of malice can be drawn from the fact that a man arms himself after being threatened with a dangerous and serious attack. The court had, by its instruction No. 12, told the jury that if they believed, from the evidence, the circumstances and information possessed by the defendant were such as to justify a reasonable and prudent man in feeling that his person, family, and property were threatened with danger at the hands of the deceased, then he had a lawful right to arm himself, and carry a deadly weapon for protection against such threatened danger which he supposed to exist, while engaged in the lawful pursuit of his business. The defendant's requested instruction therefore was cumulative, because if, under the facts and circumstances described, it would be lawful for the defendant to arm himself, then there could be no inference of malice from his doing so.

We think there is no merit in appellant's claim of error, on account of the court's refusal to give his requested instructions Nos. 5 and 6, the law as to matters presented thereby being sufficiently covered by other instructions given by the court, particularly those numbered 13, 14, and 15; nor was there error in refusing to add to the court's instruction No. 13, the matter desired by appellant being incorporated in instruction No. 14. The principles controlling our decision are that all instructions must be considered together; instructions are sufficient if they fairly present the law of the case; they are sufficient if all

taken together present the law of the case; requested instructions are properly refused when those given cover those requested. The New Mexico cases in support thereof being found in Raynold's Digest, "Criminal Laws (M) Instructions."

 It is claimed that the court committed error in overruling appellant's motion for directed verdict at the conclusion of the state's case in chief, or at the close of the whole case.

In First State Bank v. McNew, 33 N. M. 414, 269 P. 56, a civil case, we said:

"A refusal to dismiss for want of sufficient proof is not ground for reversal, where the error, if any, is cured by evidence subsequently introduced by either party."

4 C. J. "Appeal and Error," § 3005. See, also, authorities cited in State v. Vincioni, 30 N. M. 472, 239 P. 281, where we said that the weight of the authorities and reasoning of the decisions in support of such doctrine impressed us, although we found it unnecessary to decide the point.

"The rule applies undoubtedly, regardless of the form of the objection made by the defendant or the name applied thereto."

See case note to Cincinnati Traction Co. v. Durack, 14 Ann. Cas. 222. The rule is applicable in criminal as well as civil cases. See Burton v. U. S., 142 F. 57, 73 C. C. A. 243; Trometer v. District of Columbia, 24 App. D. C. 242; Green v. U. S., 25 App. D. C. 549; Territory v. Neilson, 2 Idaho, 614, 23 P. 537. See, also, Burnett v. State, 62 N. J. Law, 510, 41 A. 719; Gordon v. Commonwealth, 146 Ky. 61, 141 S. W. 1186.

 We do not mean to say that a new motion may not be made at the close of the whole case. This in effect defendant did upon his objection to the action of the trial court in submitting second degree murder instructions. The following is the gist of counsel for appellant's argument as taken from their brief:

"Appellant having been acquitted of murder by lying in wait (murder in the first degree) by virtue of the former verdict in this case; and upon the second trial, the State having relied upon and attempted to prove, not only by circumstantial but by direct

evidence, that appellant shot the deceased from ambush (or while lying in wait) ; such state of facts being specifically defined and declared by our· statute to constitute murder in the first degree, the appellant under such state of facts could not be lawfully convicted of murder in the second degree, and it was error to submit such an instruction; and it was likewise error to overrule the motion for a new trial, and to allow the verdict to stand.

"As appellant was either guilty of murder in the first degree, that is, guilty of a coldblooded assassination or shooting from ambush, or was not guilty, because the shooting was justifiable homicide, he was entitled to an instructed verdict at the conclusion of the State's Case in Chief, because under the state of facts proven by the State it was a straight case of killing by lying in wait, or murder in the first degree—nothing else—of which charge he already previously had been acquitted."

The point is ruled against appellant on the authority of State v. Smith, 26 N. M. 483, 194 P. 869, where a similar contention was made.

Counsel for appellant thinks that, because in the case at bar the state did not rely wholly on circumstantial evidence, but produced direct evidence and testimony in support of a "lying in wait" theory, the doctrine of State v. Smith, supra, is not applicable. In State v. Trujillo, 27 N. M. 594, 203 P. 846, it was pointed out that:

"There is no reason to say that the principle involved is any different in a circumstantial evidence case, from a case in which the evidence is direct."

We are unable to agree with counsel for appellant that in State v. Trujillo, we distinguished the case of State v. Smith, supra. We were correct in saying recently in State v. Greenlee, 33 N. M. 449, 269 P. 331, that State v. Smith was approved in State v. Trujillo, and we also followed it in the Greenlee Case.

It is also claimed that the court erred in overruling supplemental motion for new trial based upon newly discovered evidence. We do not deem it necessary to set forth the motion and affidavit accompanying· same at length. We have examined both carefully, and they do not meet the tests as set forth in State v. Quintana, 30 N. M. 348, 234 P. 306.

The showing of diligence rests merely upon statements of conclusion by the attorneys filing the motion. As a great deal of what the alleged new evidence consists of rests

on hearsay, it would be cumulative in that it would, if true, show that the deceased had two guns instead of the one produced on behalf of the defendant at the trial as having been possessed by the deceased, at the time of the killing, and we are not satisfied that the result would probably be changed if a new trial were granted. Therefore we cannot say that the trial court abused its discretion in overruling the motion.

It follows from all of the foregoing that there was no error in overruling the motion for new trial or the motion in arrest of judgment.

From all that has been said, it follows that the judgment of the court below should be affirmed, and it is so ordered.

WATSON and PARKER, JJ., concur.

### ON MOTION FOR REHEARING

PARKER, J. A motion for rehearing has been filed and argued. The main contention on this motion for rehearing is that the court erred in overruling the motion for a directed verdict at the close of the case for the prosecution in chief. The motion was founded upon the proposition that the defendant, having been previously convicted of murder in the second degree, could not now be convicted of murder in the first degree, of which the evidence for the prosecution showed him to be guilty, if guilty at all, and which evidence excluded all other degrees of unlawful homicide. Let us assume without argument and without deciding that the position of counsel for appellant is correct and that it was error on the part of the district court to deny the motion as the case then stood. Had the appellant stood upon his motion and refused to submit any proof in the case, then the question would properly arise as to whether the appellant could, under the proofs for the prosecution, be convicted of murder in the second degree as he was. But the appellant elected to introduce proof in an attempt to show that the killing was done in self-defense. If this proof, and the inferences authorized to be drawn therefrom by the jury, showed the appellant to be guilty of murder in the second

degree, then the verdict should not and cannot be disturbed. In other words, the technical error of the district court in denying the motion for a directed verdict, if error it was, was waived by the appellant when he elected to put in his defense and introduce evidence which authorized his conviction of murder in the second degree, if it so did. This is necessarily so both upon principle and authority. This proposition was never presented and relied upon in this court until the case of State v. Vincioni, 30 N. M. 472, 239 P. 281, was before the court. In that case, however, we found it unnecessary to decide the point for the reasons pointed out in the opinion. In State v. Ellison, 19 N. M. 428, 441, 144 P. 10, we considered a motion of this kind, but the question of waiver was never presented in the case or considered. Nor was the question considered in State v. Garcia, 19 N. M. 414, 143 P. 1012. The rest of the cases, subsequent to State v. Ellison, supra, are collected in State v. Vincioni, supra, and it is there pointed out that in none of them was the proposition relied upon or decided. It was simply assumed that such a point was available on appeal when it was, in fact, well founded under the facts as shown by the prosecution. In First State Bank v. McNew, 33 N. M. 414, 269 P. 56, we discussed this proposition and held that the error, if it was error, in refusing to direct a verdict at the close of plaintiff's case in chief, was not available when upon the whole case the judgment was correct, citing 4 C. J., Appeal and Error, § 3005, and Carpenter v. Gantzer, 164 Minn. 105, 204 N. W. 550. It is true that this was a civil case, but necessarily the rule must be the same in both civil and criminal cases. See Gordan v. Commonwealth, 146 Ky. 61, 141 S. W. 1186. Upon the subject generally see 17 C. J., Criminal Law, § 3687; 38 Cyc. pp. 1590, 1591; 26 R. C. L., Trial, § 87; Walker, Errors in Criminal Procedure, p. 28(h); Union Pac. Railway Co. v. Callaghan, 161 U. S. 91, 16 S. C. Ct. 493, 40 L. Ed. 628; Hansen v. Boyd, 161 U. S. 397, 16 S. Ct. 571, 40 L. Ed. 746; State v. Asbury, 172 Iowa, 606, 154 N. W. 915, Ann. Cas. 1918A, 856, 860; McCown v. Muldrow, 91 S. C. 523, 74 S. E. 386, Ann. Cas. 1914A, 139, note at page 146; Cincinnati Traction Co. v. Durack, 78 Ohio St. 243,

85 N. E. 38, 14 Ann. Cas. 218 and note at page 222, col-
lecting cases from all over the United States; Barabasz
v. Kabat, 91 Md. 53, 46 A. 337, is a fine case collecting
many of the cases. Southwest Cotton Co. v. Ryan, 22
Ariz. 520, 199 P. 124; People v. Barlow, 134 Mich. 394,
96 N. W. 482.

This proposition was sufficiently discussed and authori-
ties cited in the original opinion. As is therein pointed
out, the appellant again urged upon the court that the
testimony as a whole made out a case of first degree
murder only, or self-defense; and did not authorize the
submission of second degree murder to the jury. The
error in appellant's argument is easily demonstrable. It
is true that the evidence for the state tended to establish
that appellant shot from ambush in the cornfield; that he
left tracks therein where he knelt down and ejected a
shell from his gun; and the dying declaration of the de-
ceased is to the effect that appellant disappeared in the
cornfield, and that when he called to him to come out and
talk the matter over appellant told him to either put up
his hands or he would shoot, which deceased refused to
do, that appellant thereupon shot deceased, and that de-
ceased could not see appellant when he shot him or after-
wards. On the other hand, appellant puts an entirely dif-
erent face upon the matter. He says that he went up to
the ditch with his shotgun to protect himself, and after
attending to some matters about the water, sat down on
the ditch bank; that deceased rode up upon his mule and
stopped in plain view and near appellant and made a
demonstration of drawing a gun in a threatening manner
toward appellant, whereupon appellant shot deceased to
save his own life as he believed; that the track and shell
found in the cornfield were made and left there after the
shooting while appellant was looking for the supposed
confederate of deceased, whom he had heard talking and
had seen through and under the corn leaves. Just how
much of the account given of the fatal affray by appellant
the jury believed it is impossible to say, but it is certain
that they had the right to accept only such portions there-
of as they believed to be true. They may have believed
the statement of appellant that he made the track and

left the shell in the cornfield after the shooting, and dis-
believed the statement in the dying declaration that the
deceased was shot from the cornfield. On the other hand,
they may have believed appellant when he said that de-
ceased, on his mule, stopped near him and in plain view,
and disbelieved that deceased went armed or made a
hostile demonstration with a pistol. There was much con-
troversy over the finding of a pistol in the acequia some
little time after the homicide, claimed by appellant to be
the pistol with which deceased was armed and which, as
he fell from his mule after being shot, he threw away
from him. What effect this evidence and the circum-
stances surrounding its production may have had on the
jury in causing them to conclude that deceased was or
was not armed, it is impossible to say. At any rate, the
testimony was before them from which they were author-
ized to conclude that the killing was unjustifiable and was
done under such circumstances as to constitute murder in
the second degree.

Appellant urges that the district court abused
its discretion in overruling appellant's motion, and amend-
ed motion, for a new trial on the ground of newly dis-
covered evidence. The grounds upon which newly dis-
covered evidence may require a new trial are set forth in
State v. Quintana, 30 N. M. 348, 234 P. 306, and the
New Mexico cases are there collected. In the present
case the homicide was committed on August 12, 1921. A
preliminary hearing was held and a habeas corpus pro-
ceeding for bail was had, and the case was tried begin-
ning April 4, 1922, resulting in a conviction of murder in
the second degree, from which an appeal was taken to this
court, State v. Stewart, 30 N. M. 227, 231 P. 692, result-
ing in a reversal for a new trial. The present trial began
April 13, 1925, and closed April 18, 1925, when the ver-
dict of the jury came in. On April 27, 1925, a motion
for a new trial was filed. Not until August 6, 1925, was
a supplemental motion for a new trial filed to which is
attached an affidavit of one W. G. Smalley, giving the
facts upon which a new trial was sought. On August 25,
1925, these motions for a new trial and a motion in arrest

of judgment were overruled and appellant was sentenced by the court.

It thus appears that more than three years elapsed after the first trial before Smalley was found and gave his affidavit. In the supplemental motion for a new trial no details are given of any efforts made to locate Smalley, the general statement merely being made that appellant did not know of the whereabouts of Smalley and that he would testify as in his affidavit set out. The motion is not verified by appellant. Under all these circumstances we do not think that reasonable diligence has been shown. Appellant and his counsel knew at both trials of this case that Smalley was present and could be a witness to many of the facts. They also knew that Smalley had left the jurisdiction before the first trial. Yet what they did, if anything, to locate and interview him does not appear. No diligence, therefore, is shown. Again we cannot see that the evidence of Smalley, if produced, would probably change the result. The evidence would show that the deceased was armed. But this had already been shown by appellant by the finding of the pistol in the acequia. It would also show that the deceased was armed with an entirely different pistol from the one found in the ditch. Or, taken with other evidence, it would show that deceased was armed with two pistols instead of one, a situation hardly to be contemplated. Just how these different considerations could be reconciled by appellant so as to probably change the result we are unable to see. The district court, therefore, was within its discretion in overruling the motions for a new trial.

In view of the length of sentence confronting the appellant, we have given this case most careful consideration. We fail to see, however, how any of his rights have been invaded, and for that reason we must adhere to our former opinion and judgment of affirmance.

The motion for a rehearing is therefore denied, and it is so ordered.

BICKLEY, C. J., and WATSON, J., concur.