104 P.2d 900

**KRAMETBAUER v. McDONALD et al.**

SAME v. SUMNER.

No. 4520.

Supreme Court of New Mexico.

July 22, 1940.

Seth & Montgomery, of Santa Fe, and E. C. Wade and A. R. Grambling, both of El Paso, Tex., for appellants McDonald and Insurance Co.

W. C. Whatley, of Las Cruces, for appellant Sumner.

Sherman & Sherman, of Deming, for appellee.

BRICE, Justice.

These actions were consolidated in the district court for the purpose of trial, and in this court for disposition on appeal. They were instituted by the deceased's representative to recover damages for the alleged negligent death of a child six and a half years old, killed by collision with an automobile driven on the public highway by appellant Gordon Sumner, after alighting from a school bus owned by appellant, L. D. McDonald and driven by appellant Edna S. McDonald. It is charged that his death was proximately caused by the negligence of each of the appellants, Gordon Sumner and Edna S. McDonald.

The trial court found as facts: "That the death of said Eugene E. Krametbauer was due to the concurrent negligence of and lack of care of said Edna S. McDonald, the

driver of the school bus, and Gordon Sumner, the driver of the automobile belonging to the New Mexico State Highway Department."

The specific acts of negligence of each of the appellants Edna S. McDonald and Sumner are set out in detail in Finding No. 12. Neither of these findings is attacked by any of the appellants, and therefore are binding on this court.

From these findings, as well as from a review of the testimony, we conclude that both the driver of the school bus and the driver of the car that struck and killed the child were negligent, and that the negligence of each was a proximate cause of the death of the child. A judgment was entered in the consolidated cases, as follows: "That the plaintiff have judgment against the defendants, L. D. McDonald, Edna S. McDonald, Central Surety & Insurance Corporation and Gordon Sumner in the sum of Six Thousand One Hundred Thirteen and 42/100ths Dollars ($6,113.42), and that the said limit of liability for the Central Surety & Insurance Corporation, in accordance with its contract, be limited to the sum of Five Thousand Dollars ($5,000.00)."

This action was originally brought against the appellants McDonald, and thereafter appellee moved for permission to amend his complaint and to make the surety company a party defendant. This motion was resisted by appellants McDonald by an objection in the form of an answer to the motion, in which it was alleged in substance that the surety company was neither a necessary nor a proper party defendant, in "that both the liability to pay and the liability to be sued under the terms of said insurance contract, were postponed until a final judgment shall have been obtained against these defendants" (McDonalds), and that it would deprive them of a fair and impartial jury trial.

The record does not indicate that any testimony was taken on the motion or the traverse. An order was entered granting plaintiff's motion, whereupon an amended complaint was filed adding the surety company as a defendant.

The allegations of the amended complaint charge that the defendant surety company became "directly and primarily liable to any person, including any pupil transported by said defendants in said school bus, for injury or death, and became and was and is subject to suit by any person injured or killed through the negligent operation of said school bus, either jointly or with the said school bus owners and operators or severally." Thereafter the defendants McDonald moved to strike from the suit the surety company as a party defendant, upon substantially the same grounds alleged in the objections to the filing of the amendment. This motion was overruled, without presentation of evidence of the alleged facts.

It is asserted that the court erred in permitting the filing of the amended complaint making the surety company a party defendant, and in refusing to strike the surety

company as a defendant from the suit after the amended complaint was filed.

██ It is a general rule that only the person wrongfully joined as a party to an action is authorized to object to the misjoinder.

"When a legal action is brought against two or more defendants upon an alleged *joint* liability, even though based upon a *joint contract,* and one or more of them are, so far as they are individually concerned, properly sued, but the others are improperly united, the defendants properly sued have no cause of complaint whatsoever, in any form, on account of the misjoinder; they cannot demur or answer for defect of parties, because there is no 'defect;' they cannot demur generally for want of sufficient facts, because sufficient facts are averred as against them; they cannot demur or answer on account of this *misjoinder,* because that particular ground of objection is not provided for by the codes." Pomeroy's Code Remedies, 5th Ed., Section 191.

Also see: Palmer v. Town of Blaine, 115 Me. 287, 98 A. 753; Southern Surety Co. v. W. E. Callahan Const. Co., Tex.Civ.App., 283 S.W. 1098; Kelly v. Carmichael, 217 Ala. 534, 117 So. 67; Abrahams v. Abrahams, 219 Ala. 533, 122 So. 625; Reid v. Hennessy Co., 45 Mont. 462, 124 P. 273; Okmulgee Supply Co. v. Ratman, 144 Okl. 293, 291 P. 1.

We stated in Post v. Miles, 7 N.M. 317, 34 P. 586, 590 (cited with approval in Armijo v. Mountain Elec. Co., 11 N.M. 235, 67 P. 726): "Whether the interest of the minors was or was not, under any circumstances, chargeable with a lien, they were, if not necessary, at least proper, parties to a proceeding that sought to subject to a lien property in which they had an interest. But, aside from the question as to whether they were proper parties, this defect in the bill, if defect it was, could be taken advantage of only by them, or by their guardian for them. It did not rest with the adult defendants to complain of the misjoinder. Such misjoinder did not in any manner affect their rights, or embarrass them in their defense. It is a well-settled rule of equity pleading that a misjoinder of parties as defendants can be taken advantage of only by the parties improperly joined, or, at most, by such parties as may be injuriously affected by such misjoinder."

One of the appellants McDonald's grounds of objection to the amendment was that it would deprive them of a fair and impartial jury trial. That was merely an allegation in opposition to the motion. There is nothing in the record to indicate that said appellants desired a jury trial or that they were deprived of one.

██ The case was tried to the court, and if we assume that the fact of the existence of the policy might have influenced the trial court's judgment; the answer is that he knew before the trial of the surety company's liability, and that it would be called upon to pay the judgment whether or not suit against the surety company was postponed until after judgment against appellants McDonald.

In any event we are not impressed with the 'suggestion that jurors are so densely ignorant that at least one out of 12 would not have the knowledge that a public carrier of passengers including those transporting school children are protected by liability insurance. McLaughlin v. Shelton, etc., Co., 139 Wash. 253, 246 P. 575; Milliron v. Dittman, 180 Cal. 443, 181 P. 779; Benn v. Camel City Coach Company, 162 S.C. 44, 160 S.E. 135.

The trial court did not err in sustaining the motion to amend the complaint.

After the surety company was made a party defendant, it attacked the amended complaint by demurrer upon the ground that it was not a necessary or proper party to the suit, in that the policy sued on "is a policy of liability insurance, and provides among other things: 'No action shall lie against the Company unless, as a condition precedent thereto, the Insured shall have fully complied with all the conditions hereof, nor until the amount of the Insured's obligation to pay shall have been finally determined either by judgment against the Insured, after actual trial or by written agreement of the Insured, the claimant and the Company, * * *'" And, "that the amount of the Insured's obligation to pay has not been finally determined by judgment after actual trial, or by written agreement of the Insured, the claimant and the Company."

The defect (if it is a defect) in the complaint did not appear upon the face thereof, and therefore it was not subject to attack by demurrer on that ground. Territory ex rel. Baca v. Baca, 18 N.M. 63, 134 P. 212. The complaint charges that the surety company was primarily liable on the policy of insurance and no mention is made of the "no action" clause, if in fact it was a binding condition of the policy. Error if any, was waived by answering over. Baca v. Baca, supra. But in any event, the court did not err in overruling the demurrer as "misjoinder of parties" is not a ground of demurrer under the code. Among the grounds of demurrer authorized by the New Mexico statutes (in common with nearly all code states) is "that there is a defect of parties, plaintiff or defendant." N.M.Sts.1929, § 105-411. "Defect of parties" means "too few" parties, not "too many." In other words, it is a non-joinder and not a misjoinder that is a ground of demurrer for "defect of parties".

"In regard to defect of parties plaintiff the interpretation is now established, that 'defect of parties', given as one ground of demurrer, means too few, and not too many. A demurrer alleging this particular objection can only be interposed, therefore, in case of a nonjoinder of necessary plaintiffs or defendants, and never in case of misjoinder. The word 'defect' is taken in its literal sense of 'deficiency,' and not in a broader sense as meaning any error in the selection of parties. Upon this point the courts are nearly unanimous." Pomeroy's Code Rem., 5th Ed., Sec. 123; also see: Stinchcomb v. Patteson, 66 Okl. 80, 167 P. 619; Crawford v. School Dist., 68 Or. 388, 137 P. 217, 50 L.R.A.,N.S., 147, Ann.Cas.

1915C, 477; Baird v. Meyer, 55 N.D. 930, 215 N.W. 542, 56 A.L.R. 175; Rich v. Fry, 196 Ind. 303, 146 N.E. 393, 148 N.E. 202; Gagle v. Besser, 162 Iowa 227, 144 N.W. 3; Ramsey v. Hughes, 212 Ky. 715, 280 S.W. 99; Aven v. Singleton, 132 Miss. 256, 96 So. 165; Fant v. Brissey, 143 S.C. 264, 141 S.E. 450; Bjorkquist v. Reuteman, 191 Wis. 173, 210 N.W. 361; Canfield v. Newman, Tex. Civ.App., 265 S.W. 1052.

▮▮▮ It is asserted that the court erred in refusing to permit appellants to cross examine the appellee on the value of the life of the deceased child.

The following occurred: The appellee, father of the deceased, had testified that he lived about two and a half miles from Deming; that the deceased was a normal child, six and a half years old, in good health and strength and had never been treated by a physician; that he was of a friendly disposition and made friends easily; that he attended school, helped around the house, and picked cotton.

On cross examination appellee testified that he had lived in Luna County thirteen years; that his business was farming; that prior to 1939 he had worked for wages but now farmed for himself; that he did not own the place where he lived.

"Q. Is the place on which you live a farm? No, I farm about two miles west on Highway 80.

"Q. Are you living at the same place you were living in December of last year? Yes.

"Q. What size place is that?"

This was objected to because not proper cross examination and "not shown to be material to the facts in the case."

The Court: "What is the object of it?

"Mr. Whatley: I think the testimony is material in a case of this kind, *for the purpose of showing the condition of the child.*

"The Court: I sustain the objection."

After the ruling of the court, counsel for appellant stated that "in arriving at the value of the life of a child * * * its situation, and conditions under which it would be reared and the opportunity afforded it * * * constitute material questions in regard to the value of the life."

Regarding the scope of cross examination under the several rules, see Wigmore on Evidence, Secs. 1885 et seq., where the subject, including its history, is treated with a thoroughness not found elsewhere.

The English, or orthodox rule, permits cross examination on every issue in the case, whether or not inquired of in the direct examination.

In Philadelphia & T. R. Co. v. Stimpson, 14 Pet. 448, 461, 10 L.Ed. 535, Justice Story stated: The answers in controversy were inadmissible, "upon the broader principle, now well established, although sometimes lost sight of in our loose practice at trials, that a party has no right to cross-examine any witness except as to facts and circumstances connected with the matter stated in

his direct examination. If he wishes to examine him to other matters, he must do so by making the witness his own, and calling him, as such, in the subsequent progress of the cause."

This, so Wigmore states, is the basis of the so-called American rule regarding cross examination. He divides the American rule into the Michigan and the Federal rule. Under the Michigan rule it is said (Wigmore, Sec. 1889) that the cross examiner is limited only by those facts which would have formed a part of his own affirmative case. That is, he may not only inquire regarding the matters specifically gone into on direct examination, but "as to all facts which modify or explain away the effect of the facts brought out in the direct examination."

The Supreme Court of Michigan, in Campau v. Dewey, 9 Mich. 381, stated that: "* * * it is the tendency of the direct examination which determines the subject of it, as a test of cross-examination: for example, it is that essential or ultimate fact in the plaintiff's case which the direct examination tended to prove, which determines the logical limits of the cross-examination, and not merely the particular minor facts and circumstances tending to the proof of that fact. As the plaintiff is at liberty to adduce any number of these particular or secondary facts, however disconnected with each other, so that they tend to the proof of the essential resultant fact which he is bound to establish, so must the defendant be equally entitled, on cross-examination, to elicit any number of such particular facts, as may tend to disprove that resultant fact, or to weaken the tendency, in its favor, of the particular facts stated on the direct examination."

As we understand the Michigan rule, it is that where evidentiary facts are proven to establish an ultimate fact or issue, cross examination may extend to all other evidentiary facts that would tend to disprove or weaken such ultimate facts or issue, though not inquired of in the direct examination.

It has been the rule (designated by Wigmore as the degenerate form of the American rule) of the Supreme Court of the United States and the great majority of the state courts, since Philadelphia & T. R. Co. v. Stimpson, supra, that the cross examination of a witness should be limited to those facts and circumstances connected with the matters inquired of in the direct examination, except as to those tending to discredit or impeach the witness, or to show his bias or prejudice, or the like. Such is the rule in this jurisdiction. Wills v. Russell, 100 U.S. 621, 25 L.Ed. 607; Aeolian Co. v. Standard Music Roll Co., C.C., 176 F. 811, 815; see anno. 17 Ann.Cas. 9; 3 Jones on Evidence Civil Cases, Sec. 820 et seq; 28 R.C.L. "Witnesses" Sec. 196; 70 C.J. "Witnesses" Sec. 818; Morrill v. Jones, 26 N.M. 32, 188 P. 1108; State v. Stewart, 34 N.M. 65, 277 P. 22.

But cross examination is not confined to the identical details testified to in chief, but extends to its entire subject matter (Union Trust Co. v. Woodrow Mfg. Co., 8 Cir., 63 F.2d 602), and to all matters that

may modify, supplement, contradict, rebut, or make clearer the facts testified to in chief by the witness on direct examination. Morrill v. Jones, 26 N.M. 32, 188 P. 1108.

The right of cross examination extended to the entire subject of the child's physical condition, health, disposition, attendance at school, energy, etc.; but it did not extend to "the conditions under which it was reared, and the opportunities afforded it." We have gone fully into the question presented, though the ruling of the court on the question "What size place is that?" would not seem to justify the assignment. The ruling of the court was not erroneous.

■ It should be stated that the scope of cross examination must necessarily rest largely in the sound discretion of the court because of the difficulty of ruling precisely on the questions that arise in nearly all contested cases. The trial judge is clothed with a large discretion in the application of the rule. State v. Stewart, 34 N.M. 65, 277 P. 22; Union Trust Co. v. Woodrow Mfg. Co., supra. It is much safer to resolve the doubts in favor of the cross examiner than to risk excluding testimony that should be admitted.

■ The appellants McDonald and the Surety Company, by cross complaint, sought a judgment over against appellant Sumner upon the theory that Edna McDonald was only passively negligent, whereas the appellant Sumner was actively negligent and therefore primarily liable for the damages which resulted from the death of the child.

The findings of the court were in substance that the appellant Edna McDonald's negligence was a proximate cause of the child's death in that she stopped the school bus with all four wheels on the pavement and discharged the child at a dangerous place in the highway, where there were deep borrow pits on each side, and without giving the proper signal or warning to approaching cars; that, with knowledge of the approach of the car of appellant Sumner, she discharged the deceased child from the bus without warning him of its approach; that she permitted him to pass around the front of the bus, which obstructed his view in the direction of Sumner's car, thereby giving him the right to believe that the crossing was safe; that she discharged the child from the bus without requiring the older sister and brother to escort him across the highway.

The court found that Gordon Sumner's negligence was a proximate cause of the death of the child, in that he was operating his car at an unsafe speed and in a reckless manner in view of the road conditions and the blinding sun, which prevented him from distinguishing objects clearly or to have control of his car; and in that he attempted to pass the school bus without giving warning as required by law and in a manner calculated to endanger the children discharged therefrom.

The general rule is that one tort-feasor cannot recover indemnity from another where their joint concurring acts were the proximate cause of the damage. This rule

is subject to many exceptions, and in some states (including New Mexico) it is provided by statute that contribution may be enforced by a judgment against a co-tort-feasor. Sec. 76-101, N.M.Sts.1929.

The rule contended for by appellants Mc-Donald and Surety Company is stated by the Supreme Court of the United States in Union Stock Yards Co. v. Chicago, B. & Q. R. Co., 196 U.S. 217, 25 S.Ct. 226, 227, 49 L.Ed. 453, 2 Ann.Cas. 525, as follows:

"Coming to the very question to be determined here, the general principle of law is well settled that one of several wrongdoers cannot recover against another wrongdoer, although he may have been compelled to pay all the damages for the wrong done. In many instances, however, cases have been taken out of this general rule, and it has been held inoperative in order that the ultimate loss may be visited upon the principal wrongdoer, who is made to respond for all the damages, where one less culpable, although legally liable to third persons, may escape the payment of damages assessed against him by putting the ultimate loss upon the one principally responsible for the injury done. These cases have, perhaps, their principal illustration in that class wherein municipalities have been held responsible for injuries to persons lawfully using the streets in a city, because of defects in the streets or sidewalks caused by the negligence or active fault of a property owner. * * *

"Of this class of cases is Washington Gaslight Co. v. District of Columbia, 161 U.S. 316, 16 S.Ct. 564, 40 L.Ed. 712, in which a resident of the city of Washington had been injured by an open gas box, placed and maintained on the sidewalk by the gas company, for its benefit. * * * Many of the cases were reviewed in the opinion of the court, and the general principle was recognized that, notwithstanding the negligence of one, for which he has been held to respond, he may recover against the principal delinquent where the offense did not involve moral turpitude, in which case there could be no recovery, but was merely malum prohibitum, and the law would inquire into the real delinquency of the parties, and place the ultimate liability upon him whose fault had been the primary cause of the injury."

In such cases the parties are held not to be in pari delicto. Gray v. Boston Gaslight Co., 114 Mass. 149, 19 Am.Rep. 324; Boston Woven Hose & Rubber Co. v. Kendall, 178 Mass. 232, 59 N.E. 657, 51 L.R.A. 781, 86 Am.St.Rep. 478; Seattle v. Puget Sound Imp. Co., 47 Wash. 22, 91 P. 255, 12 L.R.A., N.S., 949, 125 Am.St.Rep. 884, 14 Ann.Cas. 1045. But in this case we think that the appellants Edna McDonald and Gordon Sumner were each active tort-feasors, and primarily liable to the damage done.

We said, through Mr. Justice Mabry, in Archuleta v. Jacobs, 43 N.M. 425, 94 P.2d 706, 709, which was a similar case: "It cannot be said, however, that the driver of a school bus may be held to no further duty than that of safely depositing his charge at the customary unloading zone, when circum-

stances would indicate to a reasonably prudent person that a child of tender years might properly require the further precaution of supervision and direction in its departure from the vicinity of the stop."

And quoted therein approvingly the following, from Burnett v. Allen, 114 Fla. 489, 154 So. 515: "As the contract contemplated the transportation of children who are incompetent to be charged with the assumption of risk because of their tender years and inexperience, it likewise contemplates, and by implication at least binds, the person contracting to furnish and conduct the means of transportation to use every reasonable precaution and care for the safety of such children and to prevent any harm or damage coming to them, either in approaching the bus, or while riding in the bus or when alighting from and leaving the immediate proximity of the bus at the completion of their journey, or at any time during the journey."

The appellant Edna McDonald was under a duty to use reasonable care and diligence for the protection of the children in her charge. Her duty called for activity in doing that which was necessary for the protection or assistance of the children in her care.

"Negligent conduct may be either:

"(a) an act which the actor as a reasonable man should realize as involving an unreasonable risk of causing an invasion of an interest of another, or

"(b) a failure to do an act which is necessary for the protection or assistance of another and which the actor is under a duty to do." Sec. 284 Restatement of the Law of Torts.

■■■ She knew that children of tender years lacked the necessary caution and prudence to protect themselves against dangerous situations. The highway was paved and no doubt much travelled, and one of the hazards to the safety of the children, against which she was required to guard them was collisions with automobiles.

"If the realizable likelihood that a third person may act in a particular manner is the hazard or one of the hazards which makes the actor negligent, such an act whether innocent, negligent, intentionally tortious or criminal does not prevent the actor from being liable for harm caused thereby." Sec. 449, Restatement Law of Torts. Also see Sec. 447, Id.

It was not at all extraordinary that Sumner should have been driving his car at a high rate of speed along the highway while the bus was stopped at its side.

To relieve said appellants from the negligence of the appellant Edna McDonald on the ground of her passivity or inactivity in connection with the accident, when the law required activity on her part for the protection or assistance of the children in her care, would place a premium on negligence. No one can make his own misconduct a ground for an action in his own favor. Morgan Warehouse & Commercial Co. v.

Gilbert Mfg. Co., Tex.Civ.App., 60 S.W.2d 1053.

The following cases illustrate the rule regarding passive and active negligence: East Texas Pub. Serv. Co. v. Johnson et al., Tex.Com.App., 6 S.W.2d 344; Seaboard Air Line Ry. Co. v. American District Elec. Protective Co., 106 Fla. 330, 143 So. 316; Cohen v. Noel, 21 Tenn.App. 51, 104 S.W. 2d 1001; Gregg v. City of Wilmington, 155 N.C. 18, 24, 70 S.E. 1070, 1073; Kinloch Telephone Co. v. St. Louis, 268 Mo. 485, 188 S.W. 182; Scott v. Curtis, 195 N.Y. 424, 425, 88 N.E. 794, 40 L.R.A.,N.S., 1147, 133 Am.St.Rep. 811; Tacoma v. Bonnell, 65 Wash. 505, 118 P. 642, 36 L.R.A.,N.S., 582, Ann.Cas.1913B, 934; Fidelity & Casualty Co. v. Christenson, 183 Minn. 182, 236 N. W. 618.

Much is said in the brief of appellants McDonald and the Surety Company regarding the improper joinder of the Surety Company as a party defendant, under assignments we have disposed of; but no assignment of error, or point, was made of the fact that the judgment against the Surety Company was erroneous, in that suit was not authorized against it until after judgment had been obtained against the defendant Sumner. We are therefore not called upon to determine that question.

The judgment of the district court is affirmed.

It is so ordered.

BICKLEY, C. J., and ZINN, SADLER, and MABRY, JJ., concur.