216 .P.2d 921

**STATE v. SMITH.**

No. 5242.

Supreme Court of New Mexico.

April 15, 1950.

Rehearing Denied April 28, 1950.

Caswell S. Neal, Carlsbad, for appellant.

Joe L. Martinez, Attorney General, W. R. Kegel, Assistant Attorney General, for appellee.

McGHEE, Justice.

The appellant was tried on an information charging him with murdering his wife by strangling and choking her to death. The charges of murder in the first degree, second degree, voluntary and involuntary manslaughter were submitted to the jury and a verdict of guilty of voluntary manslaughter was returned.

The defense was principally based on the claim that the deceased committed suicide, or died as the result of an accident when he was attempting to release a belt she had drawn around her neck. He testified that when he returned home from an errand she was lying on the floor with the gas turned on and holding her nose; that he cut the gas off, put her on the bed, opened the doors and windows and later went outside; that he heard a choking sound and went back inside and saw she had a belt around her neck and was pulling it with her hands; that he put his hand between the belt and her neck to loosen it but there were some little knobs on it that kept it from slipping; that he then tried to break the belt and the buckle broke off, releasing it; that she then began to turn blue and told him she had taken some sleeping pills; that he told her she was dying, and that he then rushed off after his brother in another part of Carlsbad and the two then returned to the home.

The officers soon appeared on the scene and the appellant later stated in response to a question by an officer why he had killed her, "Well what of it? I should have done it three years ago." When the body of

the deceased was examined by a physician and the officers shortly after she passed away there were bruises on each side of the neck and on her nose, and the hyoid bone (Adam's apple) was broken.

The appellant and his wife were married in 1946 but had an unhappy married life and separated several times. She had attempted suicide on several occasions and was badly crippled in her hands and limbs at the time of her death.

■ The first point urged by the appellant as a ground of reversal is the claimed insufficiency of the evidence to sustain a conviction, although he did not move for an instructed verdict at the end of the state's case in chief or at the conclusion of all of the evidence in the case. In order to test the sufficiency of the evidence he invokes the doctrine of fundamental error as announced in State v. Garcia, 46 N.M. 302, 128 P.2d 459. In that case the state had not only failed to prove the guilt of the defendant but the evidence established his innocence, and we declined to allow the conviction to stand even in the absence of a motion for a directed verdict or exceptions. The Garcia case, however, does not afford the appellant any relief for, as we view the evidence in this case, it amply sustains the verdict, and a motion for a directed verdict would have been properly denied.

■ The appellant next claims that the trial court improperly limited the cross-

examination of his brother Whitton Smith, who was called by the state and testified that he had been present in the apartment of the appellant and heard a quarrel between the appellant and his wife approximately two hours before she met her death. The appellant attempted to show by the witness on cross-examination that the deceased had theretofore attempted to commit suicide on several occasions. Such facts, if true, were not connected, so far as the record shows, with the quarrel, and it cannot be said that they tended to discredit or impeach the witness, or to show his bias or prejudice, or the like. It was not error to so limit the cross-examination. Krametbauer v. McDonald, 44 N.M. 473, 104 P.2d 900. If the appellant desired to introduce such testimony there was nothing to keep him from calling the witness when he put on his case.

In his direct examination the appellant was asked if he had ever been in trouble before, to which he answered: "Yes, sir," and he then related two convictions of burglary. His counsel then asked: "Since 1936 or 1937 have you ever been in any more trouble?" To which he answered: "No, sir."

On cross examination he was asked by the District Attorney if he had not been arrested in Carlsbad two times since 1938 for being drunk, and his objection that being drunk was not a crime involving moral turpitude was overruled. The appellant

answered that he remembered being so arrested one time but it might have been two times.

We believe that the question propounded to the appellant by his attorney on direct examination was for the purpose of showing that he had been a law-abiding person since his former convictions and free of brushes with the officers of the law, and, therefore, the question asked on cross examination was proper.

The appellant next complains of the admission over his objections of an excerpt from a portion of a letter written by him to the deceased nine months before her death at a time when they were separated and the appellant was living in Clovis. The state had only one sheet of the letter and the envelope in which it was mailed. The part admitted reads as follows:

"Evelyn why in the hell did you do that? I told you I was leaving and I told you I didn't give a dam who you went with it was none of my business after we both decided to call it quits. You could have brought your boy friend right on the same bed where I would have been pased out and tutched you * * *

"I asked the Dr. in Santa Fe to cheack close on your sanity and he said you wasn't insane. But Ill tell you there has been times that I wasn't so sure."

The remainder of the letter, which likewise did not reflect credit on the writer,

was not admitted, and later the last sentence of the first paragraph quoted above was stricken from the consideration of the jury.

The excerpt from the letter was admissible for two purposes. First, to rebut the impression left by the appellant in his testimony that he had left his wife because she had been putting butcher knives under her pillow. His statement indicates that the separation was by mutual consent. Second, he had testified that his wife had taken a number of amytal tablets and that he had gone to a doctor in Santa Fe, and that the doctor had told him his wife's mental condition was not right and that she needed treatment and when the appellant told the doctor that he, the appellant, lived at Los Alamos, the doctor said there were some of the best psychiatrists in the country up there, and that the doctor told him to watch her very closely until she was confined for those treatments.

One of the defenses interposed in the case was that the deceased was insane and had committed suicide. We think his statement that the same doctor had told him she was not insane was admissible to disprove or cast doubt on his previous testimony on the subject.

The appellant next says that the trial court erred when it permitted the District Attorney to question him on cross-examination about a check payable to the de-

ceased which had been sent to her by her former husband, and what he had done with the money, and to likewise question him regarding a sale of certain silverware belonging to the couple.

The Attorney General contends that this testimony was admissible in connection with that concerning a life insurance policy for the purpose of showing that the appellant was in need of money, and tends to show a motive for the homicide.

The scope of the cross examination is largely a matter for the determination of the trial court. Krametbauer v. McDonald, supra. In view of the testimony of the defendant on his direct examination, the fact that the state relied to a great extent on circumstantial evidence and the insurance policy feature of which more will be said later, the court did not err in permitting this cross-examination.

The appellant also assigns error on the action of the trial court in permitting the District Attorney to question him as to the amount of whiskey he had consumed during the week preceding the homicide. In answer to the question the appellant stated he had drunk a pint, a half pint and 12 cans of beer. In view of the facts of this case we do not believe the trial court abused its discretion in permitting the District Attorney to so question the appellant.

The appellant next claims the trial court erred in permitting the District Attorney to ask the appellant on cross examination if his wife had a $1,000 life insurance policy payable to him, and upon objection being made that the policy was the best evidence, and that the question was incompetent, irrelevant and immaterial, the question was not answered, but the policy was produced, marked as an exhibit and offered in evidence. Appellant then objected to its admission on the ground that the beneficiary named in the policy was not the appellant, apparently overlooking the fact that he had been named as beneficiary by what appears to be a regular endorsement on the policy. The court then announced that the policy would be admitted, to which the appellant excepted as improper cross-examination and not a part of the state's case on rebuttal.

The policy was offered for the purpose of establishing motive for the claimed killing and the jury was instructed that it might be considered for that purpose only. The jury, as above stated, returned a verdict of guilty of voluntary manslaughter and any error, if error it was, in the admission of the policy was thereby cured as motive is not an element of the offense for which he was convicted.

There being no reversible error, the judgment will be affirmed, and it is so ordered.

LUJAN, SADLER and COMPTON, JJ., concur.

BRICE, C. J., not participating.